UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HECTOR GUTIERREZ ORTIZ,

        Petitioner,

v.                                      Case No. 3:25-cv-1386-MMH-MCR

KRISTI NOEM, et al.,

        Respondents.

_____

**ORDER**

**I.   Status**

Petitioner Hector Gutierrez Ortiz (Gutierrez[1]) initiated this action through counsel by filing a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. 1; Petition) on November 13, 2025. When he filed the Petition, U.S. Immigration and Customs Enforcement (ICE) was detaining Gutierrez at the North Florida Detention Center.[2] ICE is currently detaining him at Folkston Main in Folkston, Georgia.[3] Respondents filed a Response to

---

[1] Petitioner refers to himself as "Mr. Gutierrez." See Petition at 1.

[2] Formerly referred to as Baker Correctional Institution.

[3] See Online Detainee Locator System, U.S. Immigration and Customs Enforcement, available at https://locator.ice.gov/odls/#/search (last visited Dec. 17, 2025).

Habeas Petition (Doc. 11; Response), and Gutierrez filed a counseled Reply (Doc. 12). This case is ripe for review.

## II. Parties' Positions

### a. Gutierrez's Petition

Gutierrez, "a native and citizen of Mexico," "entered the United States in 2013 without inspection or admission, after he opted for voluntary return in 2012." Petition at 4, 6. Gutierrez was the subject of a traffic stop on October 25, 2025, and was taken into custody "[b]ecause system checks showed an old bench warrant for a charge that had been dropped." Id. at 7. "ICE filed a detainer and took him into custody on October 27, 2025." Id. Gutierrez is being held in "mandatory immigration detention under 8 U.S.C. § 1225(b)(2), as an 'applicant for admission' who is 'seeking admission' to the United States." Id. at 2. "Before he was detained, he lived with his partner of fourteen years and their three young United States citizen children . . . and worked as a chef at a local Mexican restaurant." Id. at 7.

Gutierrez raises the following claims. First, Gutierrez contends that his mandatory detention due to his classification "as an 'arriving alien' who is 'seeking admission' . . . without any avenue to challenge that detention violates his substantive right to due process" under the Fifth Amendment. Id. at 16-17. Second, Gutierrez argues that his detention without the opportunity for a bond hearing violates his procedural due process rights. Id. at 18-20. Third,

according to Gutierrez, his mandatory detention violates the Immigration and Nationality Act (INA). Id. at 20-24. As relief, Gutierrez requests that the Court declare that 8 U.S.C. § 1226(a) governs his detention and order that he be released from custody or alternatively, "afforded a bond hearing as authorized under 8 U.S.C. § 1226(a) at which 8 U.S.C. § 1225(b)(2)(A) cannot be applied, [the Department of Homeland Security] bears the burden of proof, and the immigration judge consider[s] his ability to pay bond as part of the factors in setting bond." Id. at 24-25.

### b. Respondents' Response

Respondents acknowledge that "ICE is detaining [Gutierrez] under the mandatory detention provisions of 8 U.S.C. § 1225(b)(2)." Id. at 3. But, according to Respondents, this Court lacks jurisdiction over Gutierrez's claims for three reasons. Id. at 4-9. First, Respondents argue that 8 U.S.C. § 1252(g) strips this Court of jurisdiction, because ICE is detaining Gutierrez "pending the commencement of removal proceedings," and his "detention is a decision or action related to the decision and actions by the Secretary to begin and pursue [his] removal proceedings." Id. at 5. Second, Respondents assert that 8 U.S.C. § 1252(b)(9)—the "Zipper Clause"—likewise strips this Court of jurisdiction. See id. at 7-8. Third, Respondents contend that Gutierrez failed to exhaust his administrative remedies prior to filing this case. See id. at 8-9. Alternatively,

3

Respondents address Gutierrez's claims on the merits, arguing that his detention is "statutorily required." Id. at 11-17.

### c. Gutierrez's Reply

Gutierrez asks this Court to "reject Respondents' jurisdictional and exhaustion arguments and conclude that it does have jurisdiction in this case." Reply at 2. According to Gutierrez, "[d]istrict [c]ourts across the country, including this one, have almost universally concluded that noncitizens like Mr. Gutierrez who have entered the United States without inspection and have continued residing in the United States for years after entry are subject to detention under 8 U.S.C. § 1226(a), not mandatory detention under 8 U.S.C. § 1225(b)(2) as Respondents assert." Id. at 5 (citations omitted). Gutierrez concludes that "the Court should determine that [he] is detained under 8 U.S.C. § 1226(a) and order his release, or in the alternative, order a bond hearing under 8 U.S.C. § 1226(a). The Court should also order that [he] cannot be re-detained unless he commits a criminal violation or does not attend any of his immigration court hearings." Id. at 15.

### III. Analysis

The Court first addresses Respondents' arguments that two statutory provisions — 8 U.S.C. § 1252(g) and § 1252(b)(9) — deprive this Court of jurisdiction to adjudicate Gutierrez's claims. Then the Court addresses

4

Respondents' exhaustion argument. Because the Court rejects those arguments, the Court then addresses the merits of Gutierrez's claims

### a. 8 U.S.C. § 1252(g)

Section 1252(g) states in pertinent part that "no court shall have jurisdiction to hear any cause or claim by . . . any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). "It is a 'discretion-protecting provision' designed to prevent the 'deconstruction, fragmentation, and hence prolongation of removal proceedings.'" Camarena v. Dir., Immigr. & Customs Enf't, 988 F.3d 1268, 1272 (11th Cir. 2021) (quoting Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 487 (1999)). Nevertheless, the provision "does not cover 'the universe of deportation claims.'" Id. (quoting Reno, 525 U.S. at 482). Indeed, the Supreme Court has explained that section 1252(g) should be narrowly read to encompass only the "three discrete actions that the Attorney General may take: her decision or action to commence proceedings, adjudicate cases, or execute removal orders." Reno, 525 U.S. at 482 (internal quotation marks and citation omitted). While "'many other decisions or actions' may be 'part of the deportation process,' only claims that arise from one of the covered actions are excluded from [court] review" by this section. Camarena, 988 F.3d at 1272.

5

Here, Gutierrez is not attacking ICE's decision to commence removal proceedings, adjudicate his case, or execute an order of removal. Indeed, Gutierrez does not have an order of removal. Instead, Gutierrez is attacking ICE's decision to treat him as an "applicant for admission" under § 1225(b), which imposes mandatory detention, rather than as a noncitizen under § 1226(a), which permits a bond hearing before an immigration judge. Thus, the Court finds that § 1252(g) does not bar Gutierrez's claims.

### b. 8 U.S.C. 1252(b)(9) – the "Zipper Clause"

Under the "Zipper Clause," "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9). But "§ 1252(b)(9) 'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined.'" Dep't of Homeland Sec. v. Regents of the Univ. of California, 140 S. Ct. 1891, 1907 (2020) (quoting Jennings v. Rodriguez, 583 U.S. 281, 294-95 (2018)). The Eleventh Circuit has "clarified that the zipper clause only affects cases that 'involve[ ] review of an order of removal.'" Canal A Media Holding, LLC v. United States Citizenship

6

& Immigr. Servs., 964 F.3d 1250, 1257 (11th Cir. 2020) (quoting Madu v. U.S. Att'y Gen., 470 F.3d 1362, 1367 (11th Cir. 2006)).

Here, Gutierrez does not have an order of removal. Nor is he seeking to challenge the decision to seek removal or the process by which removability will be determined. Instead, as found above, he is challenging his classification under § 1225(b), which requires mandatory detention. Thus, § 1252(b)(9) does not bar this Court's review of his claims.

### c. Exhaustion

A petitioner need not exhaust administrative remedies if "the administrative body is shown to be biased or has otherwise predetermined the issue before it." McCarthy v. Madigan, 503 U.S. 140, 148 (1992). Recently, the Board of Immigration Appeals (BIA) found that immigration judges have no authority to consider bond requests from noncitizens who entered the United States without inspection "because aliens who are present in the United States without admission are applicants for admission as defined under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings." Matter of Yajure Hurtado, 29 I. & N. Dec. 216, 220 (BIA 2025). Thus, the BIA has already "predetermined" the issue and requiring Gutierrez to make an administrative request for a bond hearing

7

would be futile.[4] District courts around the country, including some judges on this Court, have reached this same conclusion and declined to dismiss similar cases based on the alleged failure to exhaust. See, e.g., Patel v. Hardin, No. 2:25-cv-870-JES-NPM, 2025 WL 3442706, at *3 (M.D. Fla. Dec. 1, 2025)[5] (collecting cases); see also Mohammed v. Olsen, No. 1:25-CV-02404-TWP-MKK, 2025 WL 3541819, at *2 (S.D. Ind. Dec. 10, 2025) (rejecting the respondents' argument that the petitioner must exhaust his administrative remedies by requesting a bond hearing; reasoning that "[b]ecause [the p]etitioner entered the country without inspection, if he were to move for a bond hearing, an [immigration judge] would have to decline jurisdiction over the issue" based on binding BIA precedent). Considering the circumstances, the Court rejects Respondents' exhaustion argument.

### d. Merits

The underlying premise of Gutierrez's claims is that he should be classified under 8 U.S.C. § 1226(a) and afforded a bond hearing before an

---

[4] Notably, Respondents' arguments are contradictory—on the one hand, they insist Gutierrez must exhaust his administrative remedies by requesting a bond hearing, and on the other hand, they resolutely argue that he is statutorily required to be detained and is not entitled to a bond hearing.

[5] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

immigration judge instead of being mandatorily detained under 8 U.S.C. § 1225(b)(2). The Court examines each of these statutes in turn.

Section 1225 governs "applicants for admission," which the statute defines as "[a]n alien present in the United States who has not been admitted" or those "arriv[ing] in the United States." 8 U.S.C. § 1225(a)(1); see Jennings, 583 U.S. at 287 (noting that under § 1225, "an alien who arrives in the United States, or is present in this country but has not been admitted, is treated as an applicant for admission (internal quotation marks and citation omitted)). The statute defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13). Immigration laws require applicants for admission to be inspected by immigration officers to determine whether they should be admitted into the country. Jennings, 583 U.S. at 287. Certain applicants are subject to expedited removal. See 8 U.S.C. § 1225(b)(1). But, as relevant here, § 1225(b)(2) "serves as a catchall provision," Jennings, 583 U.S. at 288, and provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained," 8 U.S.C. 1225(b)(2)(A).

On the other hand, section 1226(a) states: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision

on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The Attorney General "<u>may</u> continue to detain the arrested alien" or "<u>may</u> release the alien on bond" or "conditional parole." 8 U.S.C. § 1226(a)(1)-(2) (emphasis added). The Supreme Court has recognized that this section "applies to aliens already present in the United States." <u>Jennings</u>, 583 U.S. at 303.

"'For the past three decades,'" the government has recognized "this dichotomy." <u>Lopez v. Hardin</u>, No. 2:25-CV-830-KCD-NPM, 2025 WL 3022245, at *4 (M.D. Fla. Oct. 29, 2025) (quoting <u>Pizarro Reyes v. Raycraft</u>, No. 25-CV-12546, 2025 WL 2609425, at *4 (E.D. Mich. Sept. 9, 2025) (appeal filed Oct. 24, 2025)). Indeed, it appears that "most noncitizens who entered without inspection that were placed in standard removal proceedings received bond hearings, unless subject to an exception." <u>Pizarro Reyes</u>, 2025 WL 2609425, at *8. On July 8, 2025, however, the government changed course when the Department of Homeland Security (DHS) issued the following guidance:

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1). **Effective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole.** These aliens are also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal

10

> proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated.

ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025).[6] The BIA adopted and applied this policy in Hurtado, 29 I. & N. Dec. 216. But courts around the country have almost universally rejected the government's new interpretation of these regulations. See, e.g., Cetino v. Hardin, No. 2:25-CV-1037-JES-DNF, 2025 WL 3558138, at *3 (M.D. Fla. Dec. 12, 2025); Robles v. U.S. Dep't of Homeland Security, No. 1:25-CV-1578, 2025 WL 3558128, at *6 & n.3 (W.D. Mich. Dec. 12, 2025); Martinez-Martinez v. Noem, No. 25CV2975-GPC(VET), 2025 WL 3552746, at *6 (S.D. Cal. Dec. 11, 2025) ("Given the Government's longstanding interpretation of §§ 1225(b) and 1226(a), the [c]ourt is further persuaded that 'seeking admission' applies to arriving aliens and not aliens who have entered without inspection and lived in the United States for years."); Aguilar v. Bondi, No. 5:25-CV-01453-JKP, 2025 WL 3471417, at *6 (W.D. Tex. Nov. 26, 2025) (concluding that "§ 1225(b)(2) applies to noncitizens 'seeking admission,' and § 1226 applies to noncitizens such as [the p]etitioner who are 'already in the country'"); Belsai D.S. v. Bondi, - - - F. Supp. 3d - - -, 2025 WL 2802947, at *5 (D. Minn. Oct. 1, 2025) ("Overwhelmingly, courts have

---

[6] Gutierrez filed a copy of this Memo. See Doc. 1-2.

11

rejected the interpretation offered by Respondents that § 1225(b)(2) requires the detention of all noncitizens living in the country who are 'inadmissible' because they entered the United States without inspection."); Pizarro Reyes, 2025 WL 2609425, at *7 (collecting cases). But see Mejia Olalde v. Noem, No. 1:25-CV-00168-JMD, 2025 WL 3131942, at *3 (E.D. Mo. Nov. 10, 2025) (finding that § 1225(a)(1) "explicitly includes more than just arriving aliens in the definition of 'applicant[s] for admission'"); Vargas Lopez v. Trump, - - - F. Supp. 3d - - -, 2025 WL 2780351, at *9 (D. Neb. Sept. 30, 2025) (finding that "just because [the petitioner] illegally remained in this country for years does not mean that he is suddenly not an 'applicant for admission' under § 1225(b)(2)"). The undersigned now joins the majority of courts and rejects Respondents' arguments that Gutierrez is subject to mandatory detention under § 1225(b)(2).

Here, the issue is whether an alien present in the United States who has not been admitted includes an individual, like Gutierrez, who entered the country without inspection and lived here for years without applying for admission. Like most other courts around the country that have faced this issue, this Court finds "the overall context of § 1225 limits the scope of the terms 'applicant for admission' and 'seeking admission' in § 1225(b)(2)(A)." Pizarro Reyes, 2025 WL 2609425, at *5; see also Jennings, 583 U.S. at 297 (recognizing that § 1225(b) "applies primarily to aliens seeking entry into the

12

United States ('applicants for admission' in the language of the statute)").

Another judge on this Court recently explained:

> First, the text of the statutes suggests that § 1225 does not apply to aliens who have been in the United States for long periods. Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." Id. The use of "arriving" indicates that the statute governs incoming noncitizens, not those present already. This is supported by the text of the statute itself, which is focused on inspections for noncitizens when they arrive via "crewman" or as "stowaways." 8 U.S.C. § 1225(b)(2). These limited and more specific methods of entry suggest that § 1225 applies to noncitizens arriving at a border or port and are presently "seeking admission" into the United States.[7]
>
> Next, context and the Supreme Court's interpretation of these statutes point in the same direction. Courts are meant to "construe statutes, not

---

[7] One court provided the following analogy:

> This understanding accords with the plain, ordinary meaning of the words "seeking" and "admission." For example, someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there. As § 1225(b)(2)(A) applies only to those noncitizens who are actively "seeking admission" to the United States, it cannot, according to its ordinary meaning, apply to [a noncitizen who] has already been residing in the United States for several years.

Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 489 (S.D.N.Y. 2025).

13

isolated provisions." King v. Burwell, 576 U.S. 473, 486 (2015). As mentioned, the Supreme Court has identified § 1226 as the "default rule" applicable "to aliens already present in the United States." Jennings, 583 U.S. at 281, 288. "That Congress separated removal of arriving aliens from its more general section for 'Apprehension and detention of aliens,' § 1226, implies that Congress enacted § 1225 for a specific, limited purpose." Pizarro Reyes, 2025 WL 2609425, at *5. The Supreme Court has also observed that "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality. In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" Leng May Ma v. Barber, 357 U.S. 185, 187 (1958) (quoting Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206 (1953)); see also Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

Third, when considering amendment of the INA in 1996, Congress again acknowledged that noncitizens present in the United States have more substantial due process rights than new arrivals. See H.R. Rep. 104-469, p.1, at 163-66 (recognizing "that an alien present in the U.S. has a constitutional liberty interest to remain in the U.S., and that this liberty interest is most significant in the case of a lawful permanent resident alien"). Following the amendment, federal regulations explained, "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."

14

> Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). Finally, accepting Respondents' argument would leave § 1226 superfluous. Interpreting § 1225 to govern all noncitizens present in the country who had not been admitted leaves § 1226 with no apparent application. See TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.").

Cetino v. Hardin, No. 2:25-CV-1037-JES-DNF, 2025 WL 3558138, at *3-4 (M.D. Fla. Dec. 12, 2025); see, e.g., Lopez, 2025 WL 3022245, at *4-5 (applying the same reasoning).

It is undisputed that Gutierrez entered the United States without inspection and has been residing here since 2013. Thus, he is not properly detained under § 1225(b)(2) as Respondents contend. Instead, his detention is governed by § 1226, and he is therefore entitled to a bond hearing before an immigration judge. See Bautista v. Noem, No. 2:25-CV-996-KCD-DNF, 2025 WL 3227482, at *1 (M.D. Fla. Nov. 19, 2025) (finding that the petitioner was entitled to a bond hearing—not immediate release because § 1226(a)(1) "'grants the executive branch discretion to determine whether to detain or release a noncitizen who is facing removal proceedings.'" (quoting Hulke v.

15


Schmidt, 572 F. Supp. 3d 593, 596 (E.D. Wis. 2021)); see also Lopez-Arevelo, No. EP-25-CV-337-KC, 2025 WL 2691828, at *12 (W.D. Tex. Sept. 22, 2025).[8]

Accordingly, it is

**ORDERED**:

1. Gutierrez's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. 1) is **GRANTED to the extent** that by **December 24, 2025**, Respondents must either: (1) provide Gutierrez with a bond hearing under § 1226(a); or (2) release him. If Gutierrez is released, Respondents must notify his counsel of record in this case of the exact time and location of his release <u>no less than two hours before release</u>. The Petition is otherwise **DENIED without prejudice**.

2. No later than **December 29, 2025**, Gutierrez, through counsel, must file a notice advising of the status of his detention.

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of December, 2025.

*[signature]*
MARCIA MORALES HOWARD
United States District Judge

---

[8] Essentially, this Court is granting Gutierrez relief under Count Three of his Petition—"Violation of the [INA] Arbitrary Detention; 8 U.S.C. §§ 1225 and 1226." If Respondents fail to provide Gutierrez with a bond hearing or release him within the time allotted, he may renew his other arguments.

JAX-3 12/12
c:
Counsel of Record

17